UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WALTER G. ADAMS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1749** |
| **ST. TAMMANY PARISH SHERIFF'S OFFICE, ET AL.** | **SECTION "S" (1)** |

## ORDER AND REASONS

Plaintiff, Walter G. Adams, Jr., a state inmate, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Sheriff's Office, Sheriff Jack Strain, and Deputy Sean Beavers.[1] Defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56,[2] which plaintiff has opposed.[3] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[4]

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment under Rule 56, the Court may grant judgment when no genuine issue of material fact exists

---

[1] Plaintiff also listed as defendants "K-9 Handler" and "Deputy Beaver's Partner"; however, those individuals have never been properly identified or served.

[2] Rec. Doc. 20.

[3] Rec. Doc. 24.

[4] Rec. Doc. 16.

and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Defendants argue that plaintiff's excessive force claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

Heck, 512 U.S. at 486-87 (emphasis in original) (footnote omitted).

Defendants argue that because plaintiff has been convicted pursuant to La.Rev.Stat.Ann. § 14:108 of resisting Deputy Beavers in connection with the incident giving rise to this lawsuit,[5] Heck bars plaintiff from asserting an excessive force claim against Beavers. In support of their argument, defendants cite Arnold v. Town of Slaughter, Louisiana, 100 Fed. App'x 321 (5th Cir.), cert. denied, 543 U.S. 966 (2004). It is true that Arnold held that a conviction of resisting an officer pursuant to § 14:108[6] bars an excessive force claim against the officer in some circumstances. However, the Court of Appeals took care to note that whether the bar is applicable depends on the facts of the particular case. For example, the Court of Appeals expressly noted that Arnold was not claiming that "the police used excessive force after he stopped resisting arrest," indicating that the bar would not apply in such a circumstance. Id. at 324. That, however, is exactly what plaintiff is claiming in the instant case. In his opposition to the motion for summary judgment, plaintiff states that, after initially resisting arrest, he had a change of heart. He states:

> I wanted to submitt to the authority. I picked up the knife cracked the door open and tossed the knife straight out in front of me into the bedroom saying, "There's the knife." Then I closed the door. I heard one of them say, "Where's the knife?" the other, "It's over there." The first, "Leave it there." ... I went to the door opening it all the way and said, "I am coming out now," in a calm voice as I stepped out of the bedroom I spread my arms out wide, hands open, palms facing the bedroom doorway where they could be seen. The first thing I heard since, "Leave it there," was "Release the dog!" I don't know who said it because the lights from the flashlights were shining at me through the dark bedroom doorway. Within a second a German Shepard leaped out of the dark and caught me above my left elbow. I was only two steps out of the bathroom. I immediately laid down on my belly and stayed still. The dog stayed still pinning my arm to the floor still in the same spot. Someone turned on the lights and Deputy Beavers stepped up with the dogs leash in his hands an hooked it to the dog's collar. Deputy Beavers the commensed to

---

[5]   Rec. Doc. 20, Exhibit A.

[6]   In Arnold, the statute is incorrectly referred to as "14:08."

> repeatedly command the dog out of shear maliciousness to attack me the dogs biting went from above my elbow, to over my elbow, then to my forearm as soon as the dog stopped Deputy Beavers would command him again, "rue shaw!", "rue shaw!" each time he place his knee into the dog to get him to comply. The dog hunkered down deep into my arm shaking his head from side to side with each kneeing and command to thrash my arm Deputy Beavers wasn't subduing me he was inflicting his own form of punishment. I looked up and yelled, "stop" but he went on to do it one more time. I said, "Get him off me!" he told the do to let go look down at me and said sarcasticly, "You know sometimes we can't get these dogs to let go."[7]

Because plaintiff's conviction for resisting an officer could be based solely on his initial resistance, and because he clearly claims that Beavers used excessive force after any resistance had ended and plaintiff had fully submitted to the officers' authority, a verdict in plaintiff's favor in the instant case would not necessarily imply the validity of his conviction for violating La.Rev.Stat.Ann. § 14:108. Accordingly, Heck does not bar plaintiff's excessive force claim. See Bramletter v. Buell, Civil Action No. 04-518, 2004 WL 2988486 (E.D. La. Dec. 9, 2004).

Defendants next argue that the uncontested facts show that Deputy Beavers did not use excessive force. However, this case presents a textbook example of a genuine issue of material fact remaining in dispute. Beavers claims that his only physical contact in the incident was when he sprayed plaintiff with "O.C. spray" during his initial resistance. Plaintiff claims just the opposite; he claims that Beavers maliciously and repeatedly ordered Hektor, the police dog, to attack after all

---

[7] Rec. Doc. 24, pp. 5-6. The United States Fifth Circuit Court of Appeals has held that in a case filed by a *pro se* plaintiff, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983). Therefore, a *pro se* litigant's supplemental filings that "embellish[] the original complaint's averments" should be considered when ruling on dispositive motions. Id. Accordingly, plaintiff's opposition is properly considered a part of the complaint in this matter and will be considered in connection with the instant motion.

resistance had ended.  Clearly, the central material fact, i.e. whether excessive force was used after resistance ceased, remains in dispute and, therefore, defendants' argument fails.

Defendants next argue that Beavers is entitled to qualified immunity.  Again, the Court finds that contention wholly without merit.  The United States Fifth Circuit Court of Appeals has noted:

> Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right.  Claims of qualified immunity require a two-step analysis.  First we must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.  If there is no constitutional violation, our inquiry ends.  However, if the allegations could make out a constitutional violation, we must ask whether the right was clearly established – that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Mace v. City of Palestine, 333 F.3d 621, 623-24 (5th Cir. 2003) (internal quotation marks and citations omitted).  Clearly, plaintiff had a constitutional right under the Fourth Amendment to be free from the use of excessive force.  The facts alleged by plaintiff, taken in the light most favorable to him, would support a finding that his Fourth Amendment rights were violated by Beavers.  Moreover, the Court finds that if the incident occurred as plaintiff alleges, with Beavers mercilessly ordering the dog to attack after plaintiff was offering no resistance, it would be apparent to a reasonable officer that the conduct was unlawful.  See, e.g., Priester v. City of Riviera Beach, Florida, 208 F.3d 919, 927 (11th Cir. 2000); Watkins v. City of Oakland, California, 145 F.3d 1087, 1093 (9th Cir. 1998).

For the foregoing reasons, the Court finds that the motion for summary judgment should be denied with respect to Beavers.  However, for the following reasons, the Court finds that the motion should be granted with respect to the St. Tammany Parish Sheriff's Office and Sheriff Rodney Jack Strain.

Although plaintiff has named the St. Tammany Parish Sheriff's Office as a defendant, "a sheriff's office is not a legal entity capable of being sued ...." Cozzo v. Tangipahoa Parish Council–President Government, 279 F.3d 273, 283 (5th Cir. 2002); see also Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988).

As to Strain, it is evident that plaintiff has stated no claim against Strain in either his individual or official capacity.[8]

Regarding individual capacity claims, the United States Fifth Circuit Court of Appeals has noted: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Plaintiff has made no factual allegations against Strain. Moreover, without personal involvement, any individual-capacity claim against Strain would necessarily fail. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Additionally, the fact that Strain holds a supervisory position is of no moment. Under 42 U.S.C. § 1983, a supervisory official is not liable for the actions of his subordinates under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

---

[8] In fact, in his opposition, plaintiff acknowledges that Strain has been wrongly named as a defendant and states that he would like to drop the claim against Strain. Rec. Doc. 24, pp. 1-2.

Plaintiff also has failed to state an official-capacity claim against Strain. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Strain would in reality be a claim against the local governmental body itself. However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must show that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). Plaintiff does not allege that the purported constitutional violation in this case resulted from an official policy or custom.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment is **DENIED IN PART AND GRANTED IN PART**. The motion is **DENIED** with respect to the Deputy Beavers, and the claim against that defendant shall proceed to trial. The motion is **GRANTED** with respect to the St. Tammany Parish Sheriff's Office and Sheriff Jack Strain, and the claims against those defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this thirteenth day of October, 2006.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**